FRIEDE KIRSCHBAUM, PLAINTIFF-RESPONDENT, v. MET-
ROPOLITAN LIFE INSURANCE COMPANY, A CORPORA-
TION, DEFENDANT-APPELLANT.

Argued February 7, 1945—Decided April 19, 1945.

For the defendant-appellant, *McCarter, English & Egner*
(*Verling C. Enteman*, of counsel).

For the plaintiff-respondent, *James M. Dunn* (*Arthur C.
Dunn*, of counsel).

The opinion of the court was delivered by

COLIE, J.   This is the appeal of Metropolitan Life Insur-
ance Company from a judgment entered against it and in
favor of Friede Kirschbaum, after a jury trial in the Passaic
Circuit of the Supreme Court.   Metropolitan Life Insurance
Company, hereinafter referred to as the Company, issued its
policy insuring the life of Charles·Kirschbaum for $5,000.
In addition there was a supplemental contract of insurance
whereby the Company agreed "to pay * * * Five Thou-
sand dollars, upon receipt * * * of due proof of the death
of the insured, as the result, directly and independently of
all other causes, of bodily injuries sustained through external,
violent and accidental means, provided * * * that death
shall not have been the result of self-destruction."   On March
12th, 1941, Charles Kirschbaum died under conditions here-
inafter to be described.   The Company paid the face amount
of the policy but refused to pay the additional $5,000.   The
plaintiff, Friede Kirschbaum, then instituted suit against the

Company and it set up as a defense that the death of the insured was not the result directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means and as an additional defense asserted that the death of the insured was the result of self-destruction.

The cause came on for trial and the plaintiff proved that on March 12th, 1941, the insured, Charles Kirschbaum, was 46 years old and was engaged in the grinding and retail cutlery business. He was generally in good health and lived in his own home with his wife and twelve-year-old daughter. On the date of his death, Mr. Kirschbaum was at his place of business, carrying on his regular work. In the shop at the same time was his father, since deceased, and whose testimony was not available at the trial. Sometime in the forenoon, Mrs. Kirschbaum talked with her husband on the telephone and made an appointment with him to attend a moving picture performance about four o'clock that afternoon. At approximately one o'clock one Emil Klaucke, who was in the habit of picking up and delivering goods to Kirschbaum's customers, stopped in at the shop and saw Mr. Kirschbaum at work. The particular task at which he was then occupied was buffing large knives with blades 12 to 14 inches long. There were a number of such knives on the benches in the shop. The buffing wheel at which Mr. Kirschbaum was working was, according to this witness, in perfect condition. At about two or two-thirty o'clock in the afternoon, Mrs. Kirschbaum received a telephone call from her father-in-law, as a result of which she hurried to the shop and found her husband, Charles Kirschbaum, lying on the floor, bleeding profusely from a deep cut in the right wrist. When she saw him, he said, "Friede, help me." Her endeavors to stop the bleeding were unsuccessful so she called the Paterson General Hospital and an ambulance arrived shortly thereafter, but nevertheless Mr. Kirschbaum died. Later that day, Detective Schielke of the Paterson police force came to the shop and observed that the rag buffing wheel on one of the machines was wobbly and had a deep cut in it. There was proof that the wheel operated at a speed of 1,400 revolutions per minute.

On the floor was a blood-stained knife which had been partially buffed. There were also blood-stains on the floor below and on the ceiling above the buffing wheel referred to by the detective. On the defendant's case there was put in evidence a death certificate made out by the official medical examiner of Passaic County, Dr. George W. Surgent, which stated that the immediate cause of death was "suicide by cutting instrument—right wrist—shock from hemorrhage." Dr. Surgent also testified that Mr. Kirschbaum died from a marked loss of blood from a self-inflicted wound. Dr. George P. Olcott's opinion, based upon an examination of the *post mortem* photographs of the wound, was that the wound was self-inflicted. Both of these opinions were, in the main, grounded upon the presence of what these two doctors described, as "hesitation marks." These hesitation marks, according to the doctors, are frequently present in the case of self-inflicted wounds and their presence is accounted for by the suicide's preliminary effort to determine how and where to inflict the wound. The result thereof is that the edges of the wound are serrated.

In this posture of the proofs, the trial court submitted the case to the jury and it returned a verdict in favor of the plaintiff.

The grounds of appeal are argued under four points. The first is directed to the court's denial of the motion for a directed verdict in favor of the defendant company. Our review of the evidence in this case leaves no doubt but that there was conflicting testimony which presented a jury question and therefore we find no error in the court's action in this regard. It is next asserted that the court erred in permitting the plaintiff, Friede Kirschbaum, over objection, to answer the following question, "do you know of any reason that your husband—or motive that your husband could have had for killing himself? *A.* I don't know of any reason." Appellant's objection to this question is that an answer would require the witness to read the mind of the insured. The objection is without merit. The question clearly called for a statement of the witness' knowledge and nothing more. The next ground of appeal argued goes to the following ques-

tion addressed to one Peter Caola, who was called by the plaintiff as an expert. "Now, Mr. Caola, if the wheel, the buffingwheel, became wobbly while the knife was pressed against it, what would happen?" This was objected to but the court permitted the question and allowed an exception. The witness' answer reads as follows: "If a wheel, while in operation, becomes loose, which happens quite often, it would then have a tendency of catching into the edge of the back of the knife which is also sharp and would imbed itself into the wheel causing the article to be throwed out of your hand if the wheel is coming towards you. If it is going from you it would have to hit the ceiling or the wall, which happens, in my case, many a times." Appellant argues that this question was improper because there was then no evidence that the wheel was in a wobbly condition, nor any evidence that anyone pressed a knife against it or that at the time of the alleged occurrence it was being used by anyone. It was in evidence that within a short time after the death of Mr. Kirschbaum, Detective Schielke found the wheel wobbly; that the buffing wheel was cut and there was the evidence of Mr. Klaucke that the decedent had been using the particular wheel when the witness was in the shop at a time not long before the fatal wound was inflicted. It seems clear that this was a proper hypothetical question to put to an expert witness in light of the evidence in the case, the pertinent parts of which we have just commented upon.

The remaining exceptions argued before this court are directed to the court's charge. In the course of that charge the court said to the jury: "You must be governed in your deliberations by the evidence that is before you, but if the evidence is evenly divided, you may take into consideration in your deliberations the fact that there is this presumption against the fact that any one would deliberately take their own life by their own hand."

In so instructing the jury the trial judge disregarded the rule as settled by our adjudications. In *Dunn* v. *Goldman,* 111 *N. J. L.* 249, the Supreme Court speaking through Mr. Justice Perskie said that "a presumption is not evidence but merely a rule about evidence." This court held in *Domanow-*

*ski* v. *Prudential Insurance Co.*, 116 *Id.* 247, that "a presumption is applied by the court in a proper case to make that *quantum* of proof that, without which, the court would be obliged to nonsuit or direct a verdict. * * * A presumption is not evidence and cannot be treated as evidence by the jury in reaching a verdict." *Dunn* v. *Goldman* and *Domanowski* v. *Prudential Insurance Co., supra,* were cited in support of the proposition that a presumption is not evidence in the case of *Aydelotte* v. *Metropolitan Life Insurance Co.*, 124 *Id.* 266, and *Carroll* v. *Prudential Insurance Co.*, 125 *Id.* 397, both decisions of this court. The statement that a presumption is not evidence to establish the presumed fact is meaningless if the jury is instructed that it may take the presumption into consideration. While there may be a conflict of authority in other jurisdictions as to whether the presumption against suicide has any probative force and is to be weighed by the jury (Cf. annotation in 103 *A. L. R.* 185) the rule is settled in New Jersey that the presumption is not evidence and consequently is not for the jury to consider. As stated in the Domanowski case, *supra,* the presumption is for the use of the trial court in determining whether a *prima facie* case has been established so as to justify the trial court in requiring the defendant to come forward with evidence at the peril of suffering a direction of a verdict against him, if he fails to do so. That this, the settled law in New Jersey, is the sound rule finds support in the recommendations of the American Law Institute as embodied in its *Model Code of Evidence, Rule No.* 704, and the comment thereunder reading:

"when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its non-existence or the basic fact of an inconsistent presumption has been established."

"(2) Subject to rule 703, when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the non-existence of the presumed fact or the basic fact of an inconsistent presumption has been established, the existence or non-

existence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action."

"Comment b. Application and reasons. A presumption, to be an efficient legal tool, must (1) be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carries unpredictable connotations to different minds; and (3) be embodied in a rule easy of application by the judge in the hurry of trial. This rule meets these tests. It expresses the Thayerian theory that the sole procedural effect of a presumption is to put upon the party asserting the non-existence of the presumed fact the burden of producing evidence of its non-existence."

To the like effect *Wigmore on Evidence*, § 2491:

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

We have examined the other points raised and argued by appellant and find no merit in them. For the reasons above stated the judgment under appeal is reversed and remanded to the end that a new trial may be had, costs to abide the outcome thereof.

*For affirmance*—HEHER, PERSKIE, DILL, JJ.   3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, JJ.   11.