Evergreen Broom Manufacturing Company, Appellant, v. Pennsylvania Railroad Company.

Argued March 24, 1954.    Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Bresci R. P. Leonard,* with him *Van der Voort, Royston, Robb & Leonard,* for appellant.

*John R. Bredin,* with him *Dalzell, Pringle, Bredin & Martin,* for appellee.

OPINION PER CURIAM, May 24, 1954:

The judgment is affirmed on the following excerpts from the Opinion of Judge Sara M. SOFFEL:

"Evergreen Broom Manufacturing Company, plaintiff, brought suit in assumpsit against Pennsylvania Railroad Company, defendant, to recover damages in the sum of $3500.00 for a carload of broom corn alleged to have been received in a defective condition. The car was loaded at Walsh, Colorado, on February 23, 1948, and unloaded in Pittsburgh, Pennsylvania, on March 1, 1948, where the broom corn was found to be wet, moldy and deteriorated.

"The jury returned a verdict in favor of the defendant. . . .

"The facts of the instant case may be briefly summarized as follows:

"In January, 1948, plaintiff purchased from a Mr. Peck in Colorado some seventy-three bales of broom corn. This broom corn was shipped from Walsh, Colorado, on the morning of February 24, 1948. It had been loaded the day before in a box car belonging to the Southern Pacific Railroad, carried on the Atchison, Topeka and Santa Fe Railway Company to Chicago, Illinois, and from Chicago, Illinois, to Pittsburgh, Pennsylvania, by the Pennsylvania Railroad

Company. At the North Side freight yards of the Pennsylvania Railroad Company in Pittsburgh the contents of the car were delivered to the plaintiff in a damaged condition. Plaintiff brings this suit to recover damages.

"The plaintiff alleged that the broom corn became wet and deteriorated in transit by reason of a leaky, defective railroad car which had traveled through rain across the plains. The defendant contended that the broom corn had been permitted to lie out in open weather for a period of weeks prior to loading, and when loaded into the car by the shipper was soaking wet.

"We shall consider the matters urged in support of the motion for a new trial.

"(1) Is the verdict against the law, the evidence, and the charge of the court?

"Mr. Menafee, the railroad agent at Walsh, Colorado, testified that he knew Mr. Peck, that Mr. Peck who was ill in Springfield, Colorado (20 miles distant from Walsh) was not present when the broom corn was loaded. A Mr. Morrison loaded the car. Mr. Menafee testified that this particular car had arrived at Walsh, Colorado, loaded with an inbound shipment of merchandise consisting of machinery. When the shipper ordered a car for loading with broom corn, Mr. Menafee said that he examined this car personally and that it was dry and fit for broom corn. In his brief, counsel for plaintiff flatly states that the car was admitted by the defendant to be a leaky one. That is not true. Mr. Menafee further testified that there had been rain and snow for two weeks before this shipment was loaded and that the broom corn lay out in the open weather for at least two weeks. On cross examination he said that the shippers shipped twenty per cent of their shipments wet, and that the growers store the broom

corn on the open ground all winter. At destination, Mr. C. G. Plies, the railroad agent at Federal Street, Pittsburgh, where the shipment was delivered, testified that he examined the car and . . . that there was no leakage in the roof. He did say that at one end of the car there were several cracks in the end of the car from 1/4 to 1/2 inch wide. Mr. R. L. Turner, chief clerk at the Federal Street station, inspected the car and testified that the car and the broom corn were damp throughout with a moldy, gray cast.

"The bill of lading lists the weight of the broom corn at 28,560 pounds on February 24, 1948. It contains the notation, 'Shipper's load count and weight.' When the broom corn was weighed the next day at Dodge City, Kansas, by the railroad company, it listed the weight as 29,400. The plaintiff argues that this increase in weight of 840 pounds is evidence that moisture was getting into the car. This particular point is relatively immaterial. It was referred to by the Court in its charge . . . and was for the jury.

"In support of his motion for a new trial, counsel for plaintiff also argues that the bill of lading provides that the shipment was received 'in apparent good order' and that the testimony of the railroad agent at Walsh, Colorado, to the effect that the broom corn was wet when loaded 'impeached' the statement in the bill of lading. Under the law, even where a bill of lading does not contain the notation 'shipper's load and count', the effect of the recital in the bill of lading that the shipment was received in apparent good order and that the contents and condition of the contents of the packages are unknown to the carrier, the defendant carrier may produce evidence and show the contrary, to wit, that the shipment was not in good order when loaded. The case of *Amerlux Steel Corporation v. Johnson Line*, 33 Federal Reporter 2d 70,

expressly so holds. That case involved the question of a shipment of steel bars which were bent upon delivery at destination. The Court in its opinion, at page 70, said: 'The principal contention of the appellant seems to be that the court below failed to give due consideration to the recital in the bill of lading that the steel was received in apparent good order and condition. The appellee insists that this recital was qualified by a statement written across the bill of lading to the effect that the shipper was not accountable for bending, but we will assume that the latter statement did not refer to the condition of the steel when taken on board the vessel, or qualify in any way the recital that the steel was in apparent good order and condition. In other words, we will assume that the bill of lading was a clean one as claimed by the appellant. But the appellant seems to attribute too much importance to this phase of the case. A bill of lading is both a contract and a receipt. A recital that the shipment is in good order and condition is not contractual and does not amount to a warranty as between the immediate parties. The carrier is free to prove the contrary. Hutchinson on Carriers (3d Ed.) Sec. 157 et seq.; 10 C. J. 200. The recital contained in the bill of lading was therefore only prima facie evidence and was entitled to such consideration as the court deemed proper under the circumstances, and no more.'

"Proof by the plaintiff of delivery to the carrier at point or origin in good condition and delivery at destination to the consignee in a damaged condition simply makes out a prima facie case for the plaintiff and creates a presumption of fact that the damage was caused by the carrier's negligence in transportation. However, the presumption is rebuttable. . . . The burden of proof remains upon the plaintiff and after all of the evidence has been received, it is for the jury to

determine the questions of fact. The law is clearly stated in the case of *Chesapeake & Ohio Railway Co. v. A. F. Thompson Mfg. Co.*, 270 U. S. 416, 70 Law Edition 659, wherein the Court, at page 661 of the Law Edition, says: 'The respondent therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery. When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that (423) such evidence makes out a prima facie case of negligence. Miles v. International Hotel Co., 289 Ill. 320, 124 N.E. 599; Miller v. Miloslowsky, 153 Iowa 135, 133 N.W. 357; Dinsmore v. Abbott, 89 Me. 373, 36 Atl. 621; Yazoo & M. Valley R. Co. v. Hughes, 94 Miss. 242, 246, 22 L.R.A. (N.S.) 975, 47 So. 662; Hildebrand v. Carroll, 106 Wis. 324, 80 Am. St. Rep. 29, 82 N.W. 145. The effect of the respondent's evidence was, we think, to make a prima facie case for the jury. See Sweeney v. Erving, 228 U. S. 233, 57 L. ed. 813, 33 Sup. Ct. Rep. 416, Ann. Cas. 1914 D, 905; Hanes v. Shapiro, 168 N.C. 34, 35, 84 S.E. 33; Sims v. Roy, 42 App. D.C. 496, 499. But even if this "prima facie case" be regarded as sufficient, *in the absence of rebutting evidence,* to entitle the plaintiff to a verdict (Bushwell v. Fuller, 89 Me. 600, 602, 603, Atl. 1059; Cogdell v. Wilmington & W. R. Co., 132 N.C. 852, 44 S.E. 618), the trial court erred here in deciding the issue of negligence in favor of the plaintiff as a matter of law. For the petitioner introduced evidence of the condition of the cars from the time of shipment to the time of arrival, which persuasively tended to exclude the possibility of negligence.'

"The plaintiff's case was predicated on the proposition that the broom corn became wet in transit—in-

creased in weight in transit, was loaded in a leaky car not fit for grain, and subjected to wind, storm, and rain on the plains between Walsh, Colorado, and Chicago, Illinois, and during its lay-over in Chicago. Reports of the Weather Bureau were introduced into evidence to show the rainfall. As against this, certain representatives of the railroad company introduced evidence that this particular car had not traveled through any substantial rain.

"The basic issue, namely, what caused the deterioration of the broom corn, was for the jury under all the evidence. Whether the broom corn was loaded wet, as defendant contended, or whether it was loaded dry and became wet due to a leaky car which traveled through considerable rain en route from Walsh, Colorado, to Pittsburgh, Pennsylvania, was a question of fact for the jury.

"There is evidence which, if believed, sustains the jury's verdict. Certainly this court cannot now say that the verdict was against the law, the evidence and charge of the Court.

"(2)   Did the trial judge err in the charge?

"Was the charge prejudicial to the plaintiff? Did the trial judge comment unfairly as to those witnesses for plaintiff who were to be considered interested witnesses? Was the charge inadequate and incomplete? Did it fail to state the issues properly?

"We have examined the charge with great care—particularly in the light of the many objections advanced by counsel for plaintiff. We find the charge to be adequate and self-sustaining—a fair and comprehensive statement of the law and an analysis of the evidence and the issues to be determined by the jury. We do not agree that any portion of the charge was prejudicial to the plaintiff. In this connection we desire to point out that counsel for plaintiff took no

specific exceptions to any portion of the charge which he now so vigorously attacks, but was content to rest his case on the charge as given, with only a general exception.

"(3) Did the Trial Judge err in excluding a letter dated February 24, 1948, addressed by T. Ralph Peck Company of Springfield, Colorado, to the Evergreen Broom Manufacturing Co. (Plaintiff's exhibit)

"The letter in question was written by T. Ralph Peck, shipper of the broom corn to the plaintiff. It is dated February 24, 1948. It contains, inter alia, this statement: 'Got the job done just in time, as again it snowed last night an inch or so, over the district. Our winter has been prolonged and at times severe.'

"Counsel for plaintiff contends that this letter written by the shipper to the consignee, the plaintiff, on the day after the shipment was made, was improperly excluded from evidence. He states that he offered the letter to prove that the shipment was loaded just before a storm arrived at Walsh, Colorado. We believe that the letter was properly excluded. It is self-serving and is not a record made by an employee contemporaneously with events in a day's work that he cannot be expected to remember. The writer of the letter was not engaged in recording weather daily. It is an isolated letter. . . .

"In *Masterson v. Penn. R. R. Co.*, 182 F. 2d 793, at page 797, the Court said: 'Obviously a writing is not admissible under the Business Records Act merely because it may appear upon its face to be a writing made by a physician in the regular course of his practice. *It must first be shown* that the writing was actually made by or under the direction of the physician at or near the time of his examination of the individual in question and also that it was his custom in the regular course of his professional practice to make

such a record. This is the requirement of the Federal Business Records Act. Palmer v. Hoffman, 1943, 318 U. S. 109, 115, 63 S. Ct. 477, 87 L. Ed. 645, 144 A.L.R. 719; Ulm v. Moore-McCormack Lines, 2 Cir. 1940, 115 F. 2d 492, rehearing denied 117 F. 2d 222, certiorari denied 313 U. S. 567, 61 S. Ct. 941, 85 L. Ed. 1525. *It is likewise a requirement of the Uniform Business Records as Evidence Act.* Freedman v. Mutual Life Ins. Co. of New York, 1941, 342 Pa. 404, 21 A. 2d 81, 135 A.L.R. 1249.

'In the present case there is no evidence whatever that the two letters in question were writings made in the regular course of business in the sense that it was the regular practice of the physicians who signed them to write such letters or that they were written contemporaneously with the examinations of the plaintiff to which they referred.'

. . .

"Proof by the plaintiff of delivery to the carrier at point of origin in good condition and delivery at destination to the consignee in a damaged condition simply makes out a prima facie case for the plaintiff and creates a presumption of fact that the damage was caused by the carrier's negligence in transportation. The issues, however, are for the jury.

"The motion for new trial will be refused."