37 N.J. Super. 206 (1955)
117 A.2d 182
SILVER LINING, INC., A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT,
v.
BENJAMIN P. SHEIN, ET ALS., INDIVIDUALLY AND DOING BUSINESS AS SHEIN'S EXPRESS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1955.
Decided October 6, 1955.
*209 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Nathan N. Schildkraut argued the cause for defendants-appellants (Messrs. Kahn & Schildkraut, attorneys).
Mr. George Winne argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff brought this action to recover for damages to a shipment of piece goods transported by defendants, a common carrier by motor express, from Yardley, Pa. to New York City over the 1952 Labor Day week-end. The primary issue mooted at the trial in the Law Division was the condition of the goods at the point of pick-up by the carrier, there having been a clear preponderance of the proofs that much of it was wet upon delivery to the plaintiff, shipper and consignee. There was a judgment on a jury verdict for the plaintiff at the trial. The main issues on this appeal pertain to the sufficiency of the proofs for submission of plaintiff's case to the jury and to the legal correctness of the charge to the jury in allocating the burden of proof.
The shipment was picked up on August 28, 1952, most of it at Leedom's Warehouse, the remainder at the Eagle Neckband Factory, both at Yardley. Defendants submitted *210 an impressive factual case tending to show that the goods in question had been stored at the warehouse for many months before their sale to plaintiff and that not long before the pick-up date they were wet, muddy and dirty; and that at times during the period of storage the floor of the warehouse had been flooded and that the standing rolls of goods had been water-soaked on one end and then on the other, after reversal of position. Plaintiff's principal reliance was on what are called "clear" bills of lading for the goods issued by defendants. Each of these is a uniform straight bill of lading as prescribed by the Interstate Commerce Commission and is a receipt for "the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown)." No notations as to condition were set forth on these bills. Defendants sought to meet this circumstance by proof that the bills were signed by its superintendent of maintenance, an employee not regularly engaged in handling freight but impressed into duty in an emergency due to an impending strike. He testified he was not familiar with the handling of such matters and that the goods he picked up at the warehouse were muddy, wet and slimy. One other witness for plaintiff, a former employee of the previous owner of the goods, testified that he had taken inventory of the goods and examined about ten percent of it, shortly before this shipment, and that he noticed no wetness of the goods but only some water near the door.
When the truck transporting the goods arrived at plaintiff's place of business in New York on September 2, 1952, the shipment was accepted by plaintiff's representative under protest and he receipted for it with the notation, "part goods wet received." He testified the tops of the rolls were "pretty wet" and that the "bottom of the truck was wet." Two salvage experts for plaintiff testified that a substantial proportion of the goods was wet or damp and that much of it was dirty. It is to be noted, however, that plaintiff expressly conceded at the trial that its claim is solely for damage from wetness, not from dirt. There was evidence by plaintiff *211 purporting to show an inordinate amount of rainfall while these goods were in defendants' hands.

I.
The first matter requiring our attention is the contention of defendants that they should have had judgment before submission of the case to the jury. We think not. Plaintiff had substantially more than a scintilla of evidence to sustain its burden of establishing that the goods were in worse condition from wetness upon delivery at New York than at pick-up at Yardley. A bill of lading is, in and of itself, "weighty and prima facie" evidence of the delivery to the carrier of the goods in the quantity and quality described therein, Joseph Toker Co., Inc., v. Lehigh Valley R. Co., 12 N.J. 608, 612 (1953), and, where the language of the bill of lading is as set forth above, that the goods were in "apparent good order, so far as their order could be apparent" from external inspection. Sprotte v. Delaware, L. & W.R. Co., 90 N.J.L. 720, 721 (E. & A. 1917); Goldberg v. New York, N.H. & H.R. Co., 130 Me. 96, 153 A. 812, 813 (Sup. Jud. Ct. 1931); L. Frank & Co., Inc., v. Illinois Cent. R. Co., 43 So.2d 88, 91 (La. Ct. App. 1949); Matthews-Carr v. Brown Exp., 217 S.W.2d 75, 77 (Tex. Civ. App. 1948). Thus, the bills of lading and the other more tenuous proofs of the condition of the goods in Pennsylvania offered by plaintiff were some evidence that when picked up by the carrier the merchandise was not as wet, if at all, as when delivered to plaintiff, and were sufficient to create an issue of fact for the jury.

II.
Defendants next complain of the court's charge to the jury concerning the general legal measure of their liability in the following language:
"* * * under our law it is said that a common carrier, * * * is an insurer of goods except in certain cases resulting from acts of God, which are not involved here, or from the acts of the public enemy, which are not involved here, or from some inherent nature *212 of the property, or from some default of the shipper. Those are the exceptions we have in the case of a common carrier, and if there are no exceptions we say that the common carrier is an insurer, which means exactly what the term implies; that is, that he must pay unless he falls within some of those exceptions involved in the case; * * *."
We agree with defendants' position to the extent that we regard the term "insurer" as an unfortunate one in addressing present-day insurance-conscious jurors, particularly since the number of exceptions to the rule of carrier's liability and the prerequisite obligation of the shipper to show pick-up by the carrier of goods in better condition than when delivered to the consignee present not inconsiderable barriers between a claim and a right of recovery against a carrier. But we cannot hold that the statement of the rule by the trial judge was not substantially correct in law, particularly in relation to an interstate shipment. 49 U.S.C.A. §§ 20 (11), 319; Joseph Toker Co., Inc., v. Lehigh Valley R. Co., supra (12 N.J., at page 611); and see Commercial Molasses Corp. v. New York T.B. Corp., 314 U.S. 104, 109, 62 S.Ct. 156, 86 L.Ed. 89 (1941). The objection to this portion of the charge will not justify a reversal.

III.
We do find, however, that the undertaking of the trial court in the charge to place the burden of proof is materially vulnerable. This had two aspects. In the first, the court instructed the jury that the clear bill of lading raised a presumption that the carrier received the goods "in good condition" in Pennsylvania and that:
"* * * If that presumption is not rebutted because since no defects were noted we have a clear bill of lading, and that means that there is a presumption that the goods were in good condition when received by the defendant, the plaintiff may recover. To overcome that presumption the burden of proof is upon the defendant to come forward with evidence which will dispel the benefit of the presumption by a preponderance of the evidence, that the goods when they were received by him, in fact, were in bad condition. * * *"
*213 Examination of the authorities indicates that it is not always clear that the courts regard the inferences as to quantity or condition derivable from a bill of lading as rising to the status of a presumption, as distinguished from that of an evidential admission by the carrier. "`In so far as bills of lading acknowledge that the carrier has received the goods, or that he has received the quantity named, they are like all other receipts and may be shown to have been given by mistake and not to speak the truth.'" New York & B. Transp. Line v. Lewis Baer & Co., 118 Md. 73, 84 A. 251, 256 (Ct. App. 1912); and see Reuther's Seafood Co., Inc., v. Railway Express Agency, Inc., 71 So.2d 419, 421 (La. Ct. App. 1954); Matthews-Carr v. Brown Exp., supra (217 S.W.2d, at page 77); but see Goldberg v. New York, N.H. & H.R. Co., supra, stating that the admission creates a presumption (153 A., at page 813), L. Frank & Co., Inc., v. Illinois Cent. R. Co., supra, referring to an "unadulterated presumption" (43 So.2d, at page 91), and Minneapolis Fire & Marine Ins. Co. v. Baltimore & Ohio R. Co., 237 Minn. 111, 53 N.W.2d 828, 33 A.L.R.2d 860 (Sup. Ct. 1952). Our own cases, as is the general tenor, refer to a bill of lading as prima facie evidence of the condition and quantity of the goods as delivered to the carrier. Joseph Toker Co., Inc., v. Lehigh Valley R. Co., supra (12 N.J., at page 612); Sprotte v. Delaware, L. & W.R. Co., supra (90 N.J.L., at page 720); Jefferson Macaroni Co. v. Pennsylvania R. Co., 9 N.J. Misc. 405, 406 (Sup. Ct. 1931), affirmed 109 N.J.L. 266 (E. & A. 1932); and see Gulf, C. & S.F. Ry. Co. v. Galbraith, 39 S.W.2d 91, 93 (Tex. Civ. App. 1931); Evergreen Broom Mfg. Co. v. Pennsylvania R. Co., 378 Pa. 60, 105 A.2d 88, 90 (Sup. Ct. 1954); cf. Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., 191 F.2d 784 (5 Cir., 1951). Wigmore points out that the term "prima facie" is sometimes used as equivalent to the notion of a presumption, but that it is also understandable in the sense either of the condition of all of the proofs on one side as sufficiently weighty, apart from the effect of presumptions, to require the opponent to fail unless he comes forward with proof, or of the state of *214 sufficiency of the evidence on one side to permit it to go to the jury. 9 Wigmore, Evidence (3rd ed. 1940), § 2494, pp. 293, 294. There are indications that the phrase is used by our own courts, in the present frame of reference, in at least the second sense mentioned (see discussion infra). Since that is equivalent to the office of a presumption, generally speaking, in shifting the burden of coming forward with evidence, we may assume, for purposes of the disposition of the problem presently under consideration, that the clear bills of lading created a presumption of law (sometimes inaccurately referred to as a presumption of fact; 9 Wigmore, op. cit. supra, § 2491, pp. 288, 289; Thayer, Preliminary Treatise on Evidence (1898), pp. 333, 340), i.e., a rule of law requiring the initial assumption that the goods when taken up by the carrier were not in apparently defective condition. But the vice in the charge of the court to the jury was that it shifted to the carrier not alone the burden of going forward with the adduction of proof tending to show that the goods were indeed in apparently defective (wet) condition, but also the burden of proof, or of persuasion of the jury, by requiring that the carrier "dispel the benefit of the presumption by a preponderance of the evidence." This was plain error since the plaintiff-shipper here began its case under the burden of the affirmative of the preliminary proposition essential to its case, that the goods were in worse condition at the end than at the beginning of their transit; in other words, that damage had occurred in transit. Given the assumed fact of their damage from wetness at journey's end it was part of plaintiff's case, and, consequently, of its burden of proof, to show what the condition of the goods was when picked up as logically essential to the required showing that that condition was not as bad as when delivery took place at New York. See Gude v. Pennsylvania Railroad Co., 77 N.J.L. 391, 393, 394 (Sup. Ct. 1909). This burden, that of persuasion, as distinguished from the burden of going forward with evidence, never shifted. 9 Wigmore, op. cit. supra, §§ 2485, 2489, pp. 270 et seq., 285 et seq. It has been so held in the precise type of situation here presented. *215 Goldberg v. New York, N.H. & H.R. Co., supra (153 A., at pages 813, 814); Wells Laundry & Linen Supply Co., Inc., v. Acme Fast Freight, Inc., 138 Conn. 458, 85 A.2d 907, 909 (Sup. Ct. Err. 1952); and see Reuther's Seafood Co., Inc., v. Railway Express Agency, Inc., supra; Minneapolis Fire & Marine Ins. Co. v. Baltimore & Ohio R. Co., supra; Nye-Schneider-Fowler Co. v. Chicago & N.W. Ry. Co., 106 Neb. 149, 182 N.W. 967, 968 (Sup. Ct. 1921). What we have said is, in effect, no more than a variant of the fundamental that it is the plaintiff's burden to establish that damages to an established extent actually occurred while the goods were in the possession of the carrier sought to be charged. The Niel Maersk (The Svenborg OG A/S D/S of 1912), 91 F.2d 932, 934 (2 Cir., 1937), certiorari denied 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582 (1937); 13 C.J.S., Carriers, § 254, p. 557. Only when the shipper satisfies the fact-finder as to that fact does the controversy become ripe for application of the rule that the carrier bears the burden of establishing, on its part, if it so contends, that the proven damage resulted from one of the exceptions to the rule of absolute carrier liability. As to that burden: Joseph Toker Co., Inc., v. Lehigh Valley R. Co., supra (12 N.J., at page 611); Galveston, H. & S.A.R. Co. v. Wallace, 223 U.S. 481, 492, 32 S.Ct. 205, 56 L.Ed. 516 (1912).
The Joseph Toker Co., Inc., case, supra, is not contrary to our determination, notwithstanding the animadversion that "the shipper's burden of proof has been met fully" when there is evidence that the carrier returned goods "in lesser quantity or quality than described in the waybill or bill of lading" (12 N.J., at page 612). The question involved in the cause sub judice was not before the court and the reference there to the burden of proof appears, from what the court said shortly thereafter (12 N.J., at pages 612, 613) concerning the necessity for "satisfactory proof" that the loss was due to an excepted cause, to have been to the rule, referred to above, concerning the "exception" cases. We read the reference to the "burden" on the carrier in the Sprotte case, supra, as being to the burden of coming forward with evidence. *216 The procedural posture of that case did not call for a conclusion by the appellate court as to whether the carrier was subject to the burden of persuasion as to the condition of the goods at point of origin.
We deem it pertinent to indicate that we have not cited Kirschbaum v. Metropolitan Life Insurance Co., 133 N.J.L. 5 (E. & A. 1945), notwithstanding defendants' reliance upon that authority in the present connection, because that case was not concerned directly with the nature of the shift in burden consequent upon a presumption. The question there was, rather, whether the jury was correctly charged that it could consider as evidential the presumption against suicide if the other evidence was "evenly divided" (133 N.J.L., at page 8). The court held this error on the classic ground that a presumption is functus officio and disappears once evidence has been introduced which would support a finding of the non-existence of the presumed fact; in other words, that its function is procedural and that it retains no evidential force, as such, when the requisite counter-proof is adduced. (Thayer, op. cit., supra, pp. 336-339). There has developed from this principle in some quarters the notion that the rule necessarily involves the unwarranted scrapping of the probative force of the facts basic to the presumption, no matter how cogent such facts in reason, upon the mere coming in of proofs contra sufficient to obviate a directed verdict but not sufficient to convince a jury of the non-existence of the presumed fact. Morgan, Presumptions and Burden of Proof, 47 Harv. L. Rev., 59, 82 (1934). It is upon the weight of this idea, to a considerable extent, that the drafters of the proposed Uniform Rules of Evidence predicate their espousal in Rule 14 thereof of the provision that in the case of presumptions deriving from facts having probative weight as evidence of the presumed fact the burden of establishing the non-existence of the presumed fact is upon the party against whom the presumption operates; in other words, the burden of persuasion in such case is on the other party, involving a shift of that burden as well as of the burden of going forward with proof, in cases where the *217 beneficiary of the presumption originally had the affirmative of the issue. Uniform Rules of Evidence, drafted by the National Conference of Commissioners on Uniform State Laws (1953). It is of interest that acceptance of the proposed rule would validate that part of the charge of the trial judge in the present case here under consideration.
It is submitted that the stated justification for the proposed rule change is of questionable substance. While decisions like the Kirschbaum case, supra (cited in the "Drafters' Comment" to proposed Uniform Rule 14) do not advert to the fact, the rule of disappearing presumptions is accompanied by the residual doctrine, well-known in New Jersey, Meltzer v. Division of Tax Appeals, 134 N.J.L. 510, 512 (Sup. Ct. 1946), as well as generally, 9 Wigmore, op. cit., supra, § 2491, p. 288, that after the procedural function of the presumption has served its purpose the inferences rationally inherent in the basic facts still remain for the consideration of the fact-finder. It is therefore not entirely accurate to imply that the traditional rule operates to deny due effect to the probabilities or to the substantive policy upon which the presumption is based. See "Drafters' Comment" to proposed Rule 14 of the Uniform Rules of Evidence, supra. Thus, in the present case, although the plaintiff-shipper at all times retained the burden of persuading the jury by a preponderance of the evidence that the goods were in worse condition upon delivery in New York than when received by the carrier, it would have been eminently appropriate for the court to charge the jury, along with the foregoing, that on plaintiff's side of the evidence scale they could weigh the inferences as to condition arising from the clear bill of lading, along with plaintiff's other proofs, even after the defendant adduced evidence as to the wet state of the goods at Yardley. Taking the case sub judice as an example, we are not persuaded that either the interests of justice or those of the convenient administration of a trial make it advisable that the ultimate burden of persuasion as to the condition of the goods at Yardley (comparatively with condition at destination) should be shifted from its normal *218 resting place with the plaintiff-shipper to the defendant carrier, perforce of the bill of lading, as the proposed rule would require. See McBaine, Burden of Proof: Presumptions, 2 U.C.L.A.L. Rev. 13, 30, 31 (1954). The wide variation in kinds of presumptions and in the degree of probative weight of the basic facts upon which those presumptions depend which are the expression of the "normal balance of probability," has had scholarly exposition. Morgan, Some Observations Concerning Presumptions, 44 Harv. L. Rev. 906, 924 (1931). Quaere whether they lend themselves to rational systematization in respect to allocation of the burden of persuasion within the bare two classifications provided in the proposed Uniform Rule 14 and the supplemental classification created by Rule 16? Cf. Rule 704 of the Model Code of Evidence, American Law Institute (1942), which substantially retains the New Jersey (and standard) rule. Would it not be the wiser course to permit the law to make its own gradual adjustments in the matter of this problem by case evolution, as it has already demonstrated its capacity to do in the development of the special presumptions, engendered in important social policy, requiring more than ordinary countervailing proof, such as the presumption of legitimacy and that of undue influence in the making of a will under certain circumstances? See In re Weeks' Estate, 29 N.J. Super. 533 (App. Div. 1954); Thayer, op. cit., supra, pp. 336, 337; Morgan, op. cit., supra (44 Harv. L. Rev., at pp. 920, 921). Compare the treatment of this special problem in Rule 16 of the Uniform Rules of Evidence, which exempts from the effect of Rule 14 only those presumptions which by law are rebuttable only by "proof beyond a reasonable doubt or by clear and convincing evidence."

IV.
The second part of the charge to the jury to which defendants take exception reduces itself, upon close examination, to an obverse of the first part of the charge found erroneous above. It reads:
*219 "The defendant has the burden of proving by a fair preponderance to you that the damage was caused by the shipper. If it should appear that part of the damage may have been caused by the shipper and part of the damage may have been caused by the defendant, the burden in such case of divided damage by different persons, the defendant has the burden of proving who did what damage by a preponderance; and if he does not prove that to your satisfaction by a preponderance the defendant has failed to meet the responsibility imposed upon him. He has a burden of segregating the damage as to whether it was the shipper or himself, and if he does not prove the segregation the damage will still fall upon him."
Since there was no evidence in the case at all to indicate that any damage which might have ensued to the goods in transit had its origin in action of the shipper, the only sense in which the first quoted sentence can be understood is that the carrier has the burden of proving that the wet condition of the goods as found at destination was but a continuance of a condition existing before pick-up by the carrier. This is erroneous. As already indicated, the defendant carrier is not under any burden until plaintiff satisfies the fact-finder that damage or loss of some kind has occurred while the goods are in the carrier's hands. As to the last two sentences of the criticized excerpt from the charge, they in effect instructed the jury that if it concluded that the goods were wet to some extent before pick-up by the carrier and sustained additional or further damage from moisture, en-route (damage from dirt being, as noted above, an excluded factor) the burden was on the carrier to segregate the damage so as to affirmatively establish the amount of the antecedent damage for which it was not responsible. Here, again, the court laid plaintiff's burden on the back of the defendants. It must be kept in mind, as we have already shown, that plaintiff never was relieved of the obligation to persuade the jury, in the first instance, that damage to the goods had transpired in transitu. Integral to that obligation is the burden to establish the amount of such damage. 13 C.J.S., Carriers, supra. Otherwise there is no basis for a judgment fixing the damages. Thus, upon the premise in the charge that the goods were wet to start with and became wetter *220 en-route, it is the shipper's inescapable obligation as part of his case, not the carrier's, to show how much wetter the goods became and only thereafter does the burden pass to the defendant to exculpate himself from liability for that damage, if he purports to do so, upon the basis of one of the recognized exceptions to a carrier's liability.
To sustain this part of the charge plaintiff relies upon Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373 (1934). We do not find it in point. There it was held that where a carrier (by vessel) transported a cargo of onions from Spain to New York, the goods concededly in good condition when loaded on board, and decay occurred en-route because of closed hatches, the closing part of the time being due to rough seas and at other times without justification, the burden lay on the carrier to segregate the damages ensuing from the justifiable hatch closures from those not so justified. This ruling flows with logic from the rule, noted above, which always places upon the carrier the burden of exculpating itself from liability for an established loss in transit on the basis of one of the established exceptions. The absence of any issue as to the good condition of the cargo at the point of origin is what distinguishes the Vallescura case from that sub judice. There the existence and amount of the loss in transit was established. Here, under the premise in the charge to the jury, it is not. See the closely comparable case of The Niel Maersk (The Svenborg OG A/S D/S of 1912), supra (91 F.2d, at page 934). It was error for the trial court to lay the burden of its establishment to the defendants rather than to the plaintiff.
We note that while the defendants took exception at the trial to the part of the charge presently under discussion, they did not as to the other part considered last hereinabove. But the identical underlying misapprehension affected both portions. A basis for urging error as to both is therefore adequately laid in the record.
For the reasons stated the judgment is reversed and the cause remanded for a new trial, costs to abide the event.