MANFORD MELTZER, SELIG BURROWS, DORIS SPATT AND ROBERTA SPATT, PARTNERS TRADING AS CENTRAL LAUNDRIES COMPANY, PROSECUTORS, v. DIVISION OF TAX APPEALS IN THE STATE DEPARTMENT OF TAXATION AND FINANCE, AND THE CITY OF JERSEY CITY, DEFENDANTS.

MANFORD MELTZER, SELIG BURROWS, DORIS SPATT AND ROBERTA SPATT, PARTNERS TRADING AS CENTRAL LAUNDRIES COMPANY, PROSECUTORS, v. DIVISION OF TAX APPEALS IN THE STATE DEPARTMENT OF TAXATION AND FINANCE, AND THE CITY OF JERSEY CITY, DEFENDANTS.

Submitted January 15, 1946—Decided September 17, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *Benjamin E. Gordon.*

For the defendant City of Jersey City, *Charles A. Rooney* (*John J. Meehan*, of counsel).

The opinion of the court was delivered by

Heher, J. Prosecutors challenge two judgments of the State Division of Tax Appeals affirming personal property tax assessments of $125,000 for each of the years 1943 and 1944. Upon the basis of returns made by prosecutors under *R. S.* 54:4–12, the taxing district made assessments of $30,000 for each of these years; but the Hudson County Tax Board, *ex mero motu*, raised each assessment to $125,000. Prosecutors thereupon appealed; but the county board affirmed each assessment.

Upon the hearing of the appeals in the State bureau, evidence was adduced by prosecutors from a professional consulting engineer that on October 1st, 1942, their machinery and equipment were worth $31,470, and on October 1st, 1943, $29,220. Prosecutors' general manager testified that on the former date the value of the inventory was $2,800, office furniture, $500, and accounts and notes receivable, $8,925, or a total of $12,225; and on the latter date the value of the inventory was $1,850, office furniture, $515, and accounts and notes receivable, $9,171.25, or a total of $11,536.25. By this showing, the total value of the assessable property, tangible and intangible, for the year 1943 was $43,695, and for the year 1944, $40,756.25. There was no cross-examination of either witness and no evidence *contra;* indeed, no testimony was introduced by the taxing district. It merely invokes the presumption that the county board, "in revising and correcting the tax lists and duplicates, acted properly and upon due proof"—citing *Newton Trust Co.* v. *Atwood,* 77 *N. J. L.* 141. The argument is that there rests upon the property owner the burden of establishing error in the judgments "by overwhelming proof;" and it is said that the uncontradicted evidence of value here does not serve to overcome the presumption because there was no allowance for "the element of value that inheres in the use of the equipment, as a whole, * * * as a going concern."

It is our function under *R. S.* 2:81–8, 54:4–58, 54:4–59 and 54:4–62 to evaluate the evidence and determine the facts and the *quantum* of each assessment in accordance with the standard prescribed by the law. Here, there is a presumption of law in favor of the assessments as revised by the county board of taxation; and the *onus* of proof of an excessive valuation is upon the property owner. *Jersey City* v. *Sun Holding Co.,* 134 *N. J. L.* 119; *Newton Trust Co.* v. *Atwood, supra; Middletown Township* v. *Ivins,* 102 *Id.* 36. But it is the settled rule that this presumption is not in itself evidence, and its legal procedural consequences vanish in the face of substantial and trustworthy evidence *contra* that goes uncontradicted. A presumption of law has no artificial probative force of its own. *General Motors Corp.* v. *State Board of Tax Appeals,* 125 *Id.* 574; *New Jersey Bell Telephone Co.* v. *Camden,* 122 *Id.* 270; *Paterson* v. *Baker,* 5 *N. J. Mis. R.* 1075. It is a mere rule of law that obtains in the absence of explanatory facts to the contrary. The presumption is not the fact in itself, nor the inference itself, but the legal consequence attached to it. A presumption of law compels the particular conclusion in the absence of evidence *contra; e converso,* it disappears as a rule of law where there is an adduction of substantial evidence by way of contradiction or explanation. But where the legal procedural consequence is thus removed by the presentation of evidence to the contrary, the inference, as a matter of reasoning, may still remain, to be assayed for its intrinsic worth alone, without any artificial probative effect. This is sometimes loosely called a "presumption of fact," which signifies merely the rational potency or probative value of the evidentiary fact, *i. e.,* its natural force and efficacy in generating belief or conviction in the mind. *Wigmore on Evidence (3d ed.),* § 2491.

There was such countervailing evidence here; and it is not reasonably subject to the strictures leveled at it by the taxing district. The professional consulting engineer was a man of long and wide experience in the particular trade. He was skilled in industrial engineering, and possessed special knowledge of the equipment used in the operation of modern linen supply and dry cleaning plants. The designing of such

machinery was one of his specialties. He "laid out" the machinery and equipment in prosecutors' plant in 1937; and he stated what he was quite certain was the "true value" of the property on the respective assessment dates. He appraised the items of machinery separately. He had made periodic inspections of the plant after the installation of the machinery in 1937; and he was familiar with the usage it had received. He allowed for depreciation and obsolescence; and he was particularly versed in the factors which enter into that determination. He said that the machines "were designed for a particular purpose and * * * represent an experiment in design;" that "it is very questionable today whether the same machines would prove economical in the same layout;" and that they were "designed to be used in conjunction with each other." He, himself, had originated the design; and it had "never been duplicated." The machinery is obsolete because "the various units would not fit in any other method of procedure or operation." This type of machinery was considered an improvement in 1937, but is now outmoded, due principally to the exigencies of the labor market. As we have seen, there was no cross-examination of the witness; his integrity has been in no wise assailed. And there was no suggestion that he had not considered all the factors that properly determine value. The same is true of the testimony relating to the inventory and the accounts and notes receivable.

Thus, the presumption invoked was overcome by credible and inherently probable and convincing evidence *contra;* and, there being no other proof of value, this evidence fixes the true value of the property for the purposes of taxation. There was no evidence whatever to sustain the valuation fixed by the State Board; and its judgment is therefore without factual support. Compare *General Motors Corp.* v. *State Board of Tax Appeals, supra; Gibbs* v. *State Board of Taxes and Assessment,* 101 *N. J. L.* 371. The proofs establish the true value of the property for the years 1943 and 1944 as $43,695 and $40,756.25, respectively; and we so find in the exercise of our fact-finding function.

The judgments of the Division of Tax Appeals are accordingly modified and, as so modified, affirmed, with costs.