RIMM, J.T.C.
This local property tax matter involves valuation and discrimination for the tax year 1983. Plaintiff overcame the presumption of correctness in favor of the county board judgment by introducing evidence from which, at the conclusion of its ease, value could be determined. Defendant’s affirmative evidence did not establish true value. However, in going forward with her case, defendant did present evidence which refuted plaintiff’s evidence of value. The case therefore raises the novel question of how the court is to discharge its duty under these circumstances.
The subject property is a single-family residence known as One Elm Lane and is designated as Block 87, Lot 22 on the tax map of plaintiff borough. For the tax year 1983 the property was originally assessed as follows:
Land $ 107,200
Improvements 52,200
Total $ 159,400.
On appeal by the taxpayer to the Monmouth County Board of Taxation a judgment was entered reducing the assessment as follows:
Land $ 90,000
Improvements 45,000
Total $ 135,000.
The municipality then filed a complaint in the Tax Court seeking an increase in the assessment as fixed by the county board of taxation judgment.
*543 The property consists of a rectangular shaped parcel of land containing 1.5 acres with frontage of 231 feet on Elm Lane. It is located in the municipality’s R-l zone, which requires a minimum of 1.5 acres in area and a frontage of 200 feet for a building lot. The property is improved with a one-story ranch style masonry and frame single-family dwelling with a total of 1,630 square feet of living area. There is an attached two-car garage. The topography of the lot was described as “quite low.”
The borough’s assessor, plaintiffs only witness, estimated that the improvements were constructed in 1950. She testified that she classified the improvements as class 18 in accordance with the assessor’s manual II, Real Property Appraisal Manual for New Jersey Assessors (3 ed. 1978) at 21, and arrived at a cost of $44,635 for the basic structure. She next determined the cost of various components of the improvements including foundation, heat, two bathrooms, one fireplace, an open porch, a terrace and an attached garage and computed a total cost of $56,545. Using a cost conversion factor of 1.55, she determined a cost of reproduction new of $87,645 and allowed depreciation of 33% to arrive at a cost of reproduction new, less depreciation, of $58,700 rounded. To this figure she added the value of the site improvements consisting of landscaping and a gravel driveway in the amount of $1,500 after depreciation. Using this cost approach, the assessor opined that the subject property had a total value of $167,400 comprised of $107,200 for the land based on comparable land sales, $58,700 for the improvements and $1,500 for site improvements. According to the testimony of the assessor, this amounted to $33,480 a room for the five rooms in the improvements, land and improvements merged.
The assessor then testified that, “in order to sustain” the appraisal, she compared the property value with the sales prices of six other properties in the borough. The first sale involved a comparable described as a “larger home.” The second sale involved a home next door to the subject property. It was described as a ranch-type with an expanded attic. This sale was adjusted for time at 12.5%. The subject of sale number *544 three was described as a home with 2,154 square feet and an expanded attic. The property involved in sale number four was described as a ranch-type with an expanded attic. Sales number five and six involved properties with living areas of 1,627 square feet and 1,832 square feet respectively according to the assessor’s testimony.
The witness determined the room sales price of each comparable property, land and building merged, but made no adjustments, except for the adjustment for time for comparable sale number two. She merely determined that her opinion of room value for the subject by the cost approach for land and improvements merged fell within the range of room sales prices, land and improvements merged, indicated by the six allegedly comparable sales. The witness then testified that the range for sales prices, including sale number two which was adjusted for time, was $19,000 to $38,571 a room, land and improvements merged. In the witness’ opinion these figures supported a value of $33,480 a room, land and improvements merged, for the subject, or a total value of $167,400 (5 X $33,480 a room). The witness then testified that she placed the most reliance, in arriving at her conclusion, on sale number five which involved a ranch-type home similar to the subject with one room over the garage. She found this home to be similar in style and size to the subject property. This property sold for $160,000 in 1980 and $208,000 in 1984.
Defendant testified on her own behalf and described her property in detail. She testified that she has one full bathroom and a “half-bath.” Defendant described her home as a five-room structure on one floor with a crawlspace “that is always wet and damp.” She testified that she has inadequate closets, inadequate storage and an undersized two-car garage. There is no attic and no air conditioning of any type. She described the property as a “very small, small house,” almost like an apartment. The kitchen cabinets are old wood cabinets with no backs, the kitchen walls being the backs of the cabinets. Defendant claims they are inadequate in size. The kitchen has never been modernized and there is no dishwasher in the *545 kitchen because there is not enough space for one. The refrigerator is in a cubical built into the kitchen which juts out into the kitchen so that there is room for a kitchen table. The porch is a “utility porch” with a usable area of nine feet by nine feet, eight inches. It is unheated. She also claims that her house is undersized according to the present zoning ordinance and would not meet the zoning requirements if built today. She finally claims that it is very difficult to find comparable properties in the same zone as hers because her house is “so undersized.”
Although defendant’s testimony was derived for the most part from copies of multiple listing service listings, she was able to describe the Cunneff property, which is comparable number five, because she almost bought that property. As a result of almost buying the property, she stated that she was quite familiar with it. She described comparable number five as consisting of a foyer 11 feet by nine feet, a living room 23 feet by 14 feet, a dining room 12 feet by 10 feet, a kitchen 13 feet by 15 feet, a family room 16 feet by 14 feet, a master bedroom 16 feet by 14 feet, a second bedroom 16 feet by 14 feet, a third bedroom 12 feet by 11 feet, a fourth bedroom or den 21 feet by 14 feet, and two and one-half baths. The property also has a fieldstone fireplace, a cedar closet and a redwood deck with wraparound seats.
I
The determination of the proper assessment for the property for tax year 1983 depends on the effect, and the procedural consequences, of the presumption of correctness which attaches to a judgment of a county board of taxation. Pantasote Company v. Passaic City, 100 N.J. 408, 495 A.2d 1308 (1985); Riverview Gardens v. North Arlington, 9 N.J. 167, 175, 87 A.2d 425 (1952). This presumption affects the burdens of production of evidence and persuasion on the issue of valuation in a local property tax matter. Relevant legal principles are derived from settled rules regarding “presumptions of law” generally.
A presumption Lot law] ... is in its characteristic feature a rule of law ... attaching to one evidentiary fact certain procedural consequences as to the *546 duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the legal consequences attached to it. [9 Wigmore, Evidence (Chadbourne rev. 1981), § 2491 at 304]
Our rules of evidence also provide: “[A] presumption is a rebuttable assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in the action.” Evi.d.R. 13 (Anno.1985).
Thus a presumption can provide the rule of law to be applied in a particular case, given the appropriate set of underlying facts. It “compels the particular conclusion [for the trial judge] in the absence of evidence contra.” In re Blake’s Will, 21 N.J. 50, 58, 120 A.2d 745 (1956). However, a presumption is not evidence in itself and has no artificial probative force of its own. Meltzer v. Division of Tax Appeals, 134 N.J.L. 510, 512, 48 A.2d 842 (Sup.Ct.1946). The procedural effect and consequences of the presumption disappear when “substantial and trustworthy” evidence is introduced by the party against which it operates and which rebuts or contradicts the result that it dictates. Ibid. This traditional view of the effect of presumptions and the adduction of rebuttal evidence is commonly referred to as the “bursting bubble” theory. 9 Wigmore, supra, § 2493a at 309. See also Womack v. Fenton, 28 N.J.Super. 345, 349, 100 A.2d 690 (App.Div.1953) (A presumption “vanishes in the face of positive, substantial, trustworthy, uncontradicted and repellent evidence”); Dwyer v. Ford Motor Co., 36 N.J. 487, 507, 178 A.2d 161 (1962). (Presumption that disability or death which occurs following a heart attack resulted from natural physiological causes, for purposes of workmen’s compensation benefits, “is emptied of all probative force and disappears from the case upon the introduction of any proof to the contrary”).
Conversely, when the presumption is unrebutted, the court is required to direct a verdict in accordance with the *547 presumption. In re Weeks, 29 N.J.Super. 533, 538, 103 A.2d 43 (App.Div.1954).
Clearly, then, the burden of producing evidence on the issue upon which a presumption operates is on the party desiring a result contrary to that compelled by the presumption. Upon failing to produce such evidence that party risks a “procedural disadvantage in the case,” McGlynn v. Newark Parking Authority, 86 N.J. 551, 562, 432 A.2d 99 (1981), in the form of a directed verdict respecting the factual issue favored by the presumption. In summary, where the party against whom the presumption operates goes forward with his proof, the “bubble bursts,” i.e., the artificial probative effect of the presumption disappears from the case. If, however, he fails to adduce such proof, the court must direct the entry of a judgment in accordance with the presumption.
Once the presumption has been overcome by “such evidence, as would ‘justify, if the trial were to a jury, a refusal to direct a verdict,’ ” In re Weeks, supra, 29 N.J.Super. at 537, 103 A.2d 43, there normally remains in the case, however, a “rational inference from [the] proven facts” which gave rise to the presumption. In re Blake’s Will, supra, 21 N.J. at 59, 120 A.2d 745.[1] Thus, the question of the existence or non-existence of the presumed fact will be resolved upon the whole evidence, as if no presumption had even been applicable; and, “the whole evidence includes not merely the specific testimony and evidence but also such inferences and conclusions of fact as are natural and proper to be drawn from the facts specifically in evidence.” Swain v. Neeld, 49 N.J.Super. 523, 531, 140 A.2d 538 (App.Div.1958), rev’d 28 N.J. 60, 145 A.2d 320 (1958), citing Cairns v. Martin, 130 N.J.Eq. 313, 22 A.2d 415 (Prerog.1941). *548 Accord, McGlynn, supra, 86 N.J. at 563, 432 A.2d 99. (When a presumption has been rebutted “ ‘[a]ll that remains is whatever inference from ordinary experience is to be drawn from the facts’ ”, citing Prosser, Torts (4 ed. 1971) § 38). These inferences [2] are proper because, in order for the presumption to have arisen in the first place, the underlying facts must have been competently established. Nonstatutory presumptions such as, inter alia, the presumption of correctness of a county board of taxation judgment, are based on considerations of public policy, and have been “justified ‘by the fact that those in government generally act within the powers granted to them and do so properly.’ So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158, 305, 456 A.2d 390 (1983).” Evid.R. 13, Comment 4, supra. In this regard, there are “inferences rationally inherent in the basic facts” which are appropriate for consideration by the trier of fact. Silver Lining v. Shein, 37 N.J.Super. 206, 217, 117 A.2d 182 (App.Div.1955). “It is therefore not entirely accurate to imply that the traditional [bursting bubble] rule operates to deny due effect to the probabilities or to the substantive policy upon which the presumption is based.” Ibid. However, the value of the inference is evidentiary only; it does not have the same probative value of a presumption that has not been contradicted.
In terms of burdens of proof, when a presumption is operative in a case, it places the burden of going forward with evidence upon the party against whom it operates. This party may or may not have the ultimate burden of proof, that is, the risk of nonpersuasion,[3] on the particular issue; but, in any event, the presumption in no way affects this latter burden. Evid.R. 14, Comment 2, supra. Even where the presumption is *549 rebutted, the risk of nonpersuasion remains with the party upon whom it was originally placed.[4]
All is then turned into an ordinary question of evidence, and the two or three general facts presupposed in the rule of presumption take their place with the rest, and operate, with their own natural force, as a part of the total mass of probative matter____ The main point to observe is that the rule of presumption has vanished;” [footnote omitted] because its function was as a legal rule to settle the matter only provisionally and to cast upon the opponent the duty of producing evidence____] [9 Wigmore, supra, § 2487 at 296].
II
In the present case, plaintiff, Rumson Borough, sought to establish a value for the subject property which exceeded the value indicated by the judgment of the Monmouth County Board of Taxation. Defendant taxpayer was favored by the nonstatutory presumption of correctness of the county board’s judgment. Riverview Gardens v. North Arlington, 9 N.J. 167, 175, 87 A.2d 425 (1952). Plaintiff, as the party against which the presumption operates, was therefore required to adduce sufficient competent evidence to rebut or overcome the presumed accuracy of the county board’s determination of value. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952); Passaic v. Botany Mills, 72 N.J.Super. 449, 454, 178 A.2d 657 (App.Div.1962), certif. den. 37 N.J. 231, 181 A.2d 13 (1967).[5] The presumption stands, and compels the result on the ultimate issue of the value of the subject property, unless the challenger carries its burden of going forward with evidence which is “definite, positive and certain in quality and quantity,” and which establishes a value different from that determined by the board. Glenwood Realty Co., Inc. v. East Orange, 78 N.J.Super. 67, 71, 187 A.2d 602 (App.Div.1963). See also Meltzer, 134 N.J.L. at 512, 48 A.2d 842. Once “substantial evidence to the *550 contrary [is] adduced,” the presumption in favor of the county board’s judgment ceases to have any artificial probative force. Van Realty, Inc. v. Passaic City, 117 N.J.Super. 425, 430, 285 A.2d 52 (App.Div.1971).
Plaintiff successfully overcame the presumption of correctness through the testimony of its expert, the borough assessor. The witness presented sufficient competent evidence to determine the true value of the property, Riverview Gardens, 9 N.J. at 175, 87 A.2d 425, and to “raise a debatable question” concerning the accuracy of the county board’s determination of value. Cf. Evid.R. 14, Comment 3, supra.
Although plaintiff thus carried its burden of production, merely overcoming the presumption of correctness in a Tax Court proceeding does not entitle plaintiff to a judgment in its favor. A trial in the Tax Court (formerly the Division of Tax Appeals[6]) “is a de novo one in which the ultimate fact sought to be determined is the full and fair value of the subject property.” Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963); Atlantic City v. Moltich, 3 N.J.Tax 147, 153 (Tax Ct.1981); N.J.S.A. 54:51A-1. Throughout the Tax Court proceedings, plaintiff retains the burden of ultimate persuasion to upset the county tax board judgment fixing the assessment for the subject property. Herman Holding Corp. v. Montvale, 5 N.J.Tax 199, 202 (Tax Ct.1983); cf. Anderson v. Exxon Co., supra, 89 N.J. at 483, 446 A.2d 486 (1982). This burden is met only when the court can conclude by a preponderance of the credible evidence that plaintiff’s opinion of value represents the true value of the subject property. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965).
In the Tax Court, the duty is placed upon the court to “appraise the testimony, make a determination of true value and fix the assessment thereat.” Id. at 75, 208 A.2d 153, citing *551 Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963). “The search ... is for the fair value of the property, the price a willing buyer would pay a willing seller.” New Brunswick v. Div. of Tax Appeals, 39 N.J. 537, 543, 189 A.2d 702 (1963). This requirement to make an independent determination of value arises after the presumption of correctness has been met. Samuel Hird, supra, 87 N.J.Super. at 75, 208 A.2d 153. When the artificial probative force of the presumption ceases to exist, the factual issue of true value is placed before the court as the finder of fact. 9 Wigmore, supra, § 2487 at 296. The court then considers all factors bearing upon the question of value, Rek Investment Co., supra, 80 N.J.Super. at 559, 194 A.2d 368, including such conclusions and inferences as are “natural and proper” to be drawn from the facts upon which the county board of taxation judgment was based. See Swain v. Neeld, 49 N.J.Super. at 531, 140 A.2d 538. It is incumbent upon the court to weigh and balance all the conflicting evidence and the inferences appropriately drawn from the county board of taxation’s determination of value and to fix the assessment for the subject property at its true value.[7] Samuel Hird, supra, 87 N.J.Super. at 75, 208 A.2d 153. See also Meltzer, supra, 134 N.J.L. at 512, 48 A.2d 842.
In the present case the presumption disappeared once plaintiff met its burden of production of sufficient, competent evidence and overcame the presumption of correctness of the judgment of the Monmouth County Board of Taxation. In order to prevail ultimately, the borough must also persuade the court by a preponderance of the credible evidence that its opinion of value corresponds to the value of the subject property. Defendant, however, was not required to go forward with independent evidence of value, at the risk of an unfavorable judgment. She testified as to deficiencies she perceived in the *552 data and in the assumptions upon which the borough’s case was based. Taxpayer attacked the classification of her home as class 18, as defined in II Real Property Appraisal Manual for New Jersey Assessors, supra, for purposes of utilizing the reproduction cost approach. She also pointed out significant differences between her home and the allegedly comparable improvements used in the plaintiff’s assessor’s comparison sales approach.
Defendant has established that her property was not a class 18 property and was clearly not comparable to plaintiff’s sale number five on which plaintiff primarily relied in its use of the market data approach to support its opinion of value by the cost approach. Given the evidence presented by both parties and comparing it with the type of components of a class 18 single family residence, including roof, foundation, exterior walls, interior finish, floors, plumbing and lighting, the court finds that the subject property is not a class 18 single family residence. In addition the court cannot determine by a preponderance of the credible evidence that the subject property is of another class so as to make an independent determination of value. Nor is plaintiff’s comparison sales approach of any help to it in this case. Specifically, the subject consists of five rooms, one and one-half baths and a porch. Comparable sale number five alleged by plaintiff to be most comparable to the subject, consists of nine rooms and two and one-half baths with a living area of at least 1,834 square feet. In effect, the court now has before it no competent, uncontradicted evidence upon which to rely to fix the value of the subject property, except the inferences which may be drawn from the county board judgment.
In Glenwood Realty Co., Inc. v. East Orange, supra, the court affirmed the dismissal of appeals by both the taxpayer and the taxing district to the Division of Tax Appeals from a final judgment of a county board of taxation. The board had reduced the original assessment by $131,000. The taxpayer sought a further reduction and the city sought to have the original assessment increased. The court concluded that the *553 findings of the division were supported by substantial evidence, id. 78 N.J.Super. at 73, 187 A.2d 602, and therefore could not be disturbed. The division had extensively analyzed the testimony of the opposing experts, and had “concluded that each party had failed to sustain the requisite burden of proof to alter the judgment of the board,” id. at 70, 187 A.2d 602, and thereby to establish an alternative value. Accordingly, the appeals were dismissed and the county board judgment was sustained. Similarly, in Inmar Associates, Inc. v. Edison Tp., 2 N.J.Tax 59 (Tax Ct.1980), where the plain tiff-taxpayer had failed to carry its burden of proving a value for its property other than that determined by the Middlesex County Board of Taxation, and the township’s evidence was likewise incompetent to establish value, the court dismissed the complaint. The taxpayer had sought to establish that the subject site had no value, as it was at the end of its economic life as a sanitary landfill. The township contended that the site had utility and value in conjunction with the contiguous property. Judge Andrew said:
The taxpayer has presented no evidence with regard to the value of the subject when considering interrelated uses connecting it with other adjacent property. The testimony of Edison’s expert does not materially assist in this regard due to the lack of an objective foundation for his 60% adjustment and the paucity of sales data. [Id. at 67]
Conversely, in Rumson v. Haran, 3 N.J.Tax 590 (Tax Ct.1981) the presumption was overcome and the defendant went forward with the presentation of affirmative evidence of value. After both parties had presented evidence, the court said:
Sufficient competent evidence of value was presented to overcome the presumption of correctness ..., and the court finds that, by a fair preponderance of all the evidence presented on behalf of both parties, the value of the subject property [is as established by the testimony of the plaintiff’s assessor]. [Id. at 594-595]
From a careful reading of Glenwood and Inmar it appears that the various parties did not overcome the presumption of correctness by competent proof to establish value different from the assessment. In the present case competent proof establishing value so as to overcome the presumption of correctness was presented by plaintiff. However, plaintiff has failed by a preponderance of the credible evidence, after the *554 totality of the evidence presented by both parties was considered, to establish value. The evidence of value presented by plaintiffs expert to increase the county board judgment does not support plaintiffs opinion of value, since the validity of the data upon which it is based has been questioned and refuted. Plaintiff has failed to carry its burden of persuasion.
The judgment of the Monmouth County Board of Taxation is affirmed, and the Clerk of the Tax Court will enter a judgment in this matter that the assessment for 1983 is as follows:
Land $ 90,000
Improvements 45,000
Total $ 135,000.

 Evidence which will defeat the artificial probative effect of the presumption must be sufficiently convincing so that “reasonable men might honestly differ as to whether or not [the presumed fact] is the fact” In re Weeks, supra, 29 N.J.Super. at 538, 103 A.2d 43; Accord, Evid.R. 14, Comment 3 (Anno.1985) ("Evidence sufficient to raise a debatable question is necessary to rebut a presumption.”).

 The New Jersey Rules of Court Review Commission distinguished presumptions from inferences thusly: “An inference is a conclusion which may be drawn from a proven fact, while a presumption is an inference which the law directs must be drawn." Evid.R. 13, Comment 1 (Anno.1985); emphasis supplied.

 Evid.R. 1(4) (Anno.1985); N.J.S.A. 2A:84A-5 (¿.I960, c. 52, § 5).

 See, e.g., Anderson v. Exxon Co., 89 N.J. 483, 493, 446 A.2d 486 (1982) (Adduction of facts establishing prima facie case of employment discrimination raises presumption of discrimination and shifts burden of going forward to defendant; the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all time with plaintiff.)

 Cf. In re Blake’s Will, supra.

 N.J.S.A. 2A:3A-1 et seq.

 Subject to any claim of discrimination. Cf. Continental Paper Co. v. Village of Ridgefield Park, 122 N.J.Super. 446, 300 A.2d 850 (App.Div.1973), certif. den. 63 N.J. 328, 307 A.2d 101 (1973).