**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



| | | |
|---|---|---|
| **MALA SUNDAR**<br>**PRESIDING JUDGE** | | Richard J. Hughes Justice Complex<br>P.O. Box 975<br>Trenton, New Jersey 08625-0975<br>609 815-2922, Ext. 54630 Fax 609 376-3018 |

August 14, 2023

William K. and Teresa Poku
Plaintiffs, Self-Represented

Daniel O'Hern, Esq.
Byrnes, O'Hern & Heugle, LLC
Attorney for Defendant

> Re:   Poku et al. v. Borough of Red Bank
> Block 81, Lot 20
> Docket No. 007567-2022

Dear Mrs. & Mr. Poku and Counsel:

This opinion decides plaintiffs' motion for reconsideration of this court's Order dated April 14, 2023. For the reasons stated below, the motion is denied.

**BACKGROUND**

In its Order dated April 14, 2023, this court denied plaintiffs' summary judgment motion and granted defendant's cross-motion for summary judgment dismissing certain counts of plaintiffs' complaint. The court held that (1) it lacks subject-matter jurisdiction to decide the merits of plaintiffs' allegation that defendant's local property tax assessment on the above-referenced property ("Subject") for tax year 2022, and its assessments on all properties in the vicinity of the Subject were racially discriminatory, and (2) relief under the Freeze Act for tax years 2018 through 2023 based on a final judgment of this court for tax year 2017, was statutorily unavailable. The court however granted plaintiffs' summary judgment motion in part by granting Freeze Act relief

for tax years 2018 and 2019 based on the 2017 final judgment.[1] The court denied plaintiffs' request for sanctions against defendant and stated that it "will issue a Case Management Order scheduling" tax year 2022 "for trial as to the issue of valuation of the [Subject] along with tax year 2023."[2]

On May 6, 2023, plaintiffs moved for reconsideration. They argued that this court "overlooked" the application of N.J.S.A. 54:3-26, which provides that the Freeze Act applies to final judgments of a county board of taxation. They conceded that defendant is "correct that the 2017 value judgment cannot provide relief under the Freeze Act for tax year 2022," however, they stated, "it is a matter of public record that there was a value adjudication before" the Monmouth County Board of Taxation ("MCBT") "for the years 2020 through 2022."

In a supplemental pleading filed on May 11, 2023, plaintiffs attached a judgment of the MCBT for tax year 2019. That judgment dismissed plaintiffs' petition under Code 5A, which stands for "Dismissal with Prejudice, Non-appearance (lack of prosecution)." It also showed a total (land plus improvement allocation) of $181,100 in both the "original assessment" column and "judgment" column on the front page of the judgment. Plaintiffs did not appeal this judgment.

On May 18, 2023, defendant, the Borough of Red Bank ("Borough") opposed plaintiffs' reconsideration motion on grounds the court had correctly decided that (a) it lacked subject-matter jurisdiction to decide plaintiffs' race-based allegations, and (b) Freeze Act relief is unavailable for

---

[1] This court had entered a judgment for tax year 2017 reflecting the assessment at $165,000 based on the parties' settlement. That judgment was final and therefore, constituted a base year for purposes of the Freeze Act.

[2] For tax year 2022, the Monmouth County Board of Taxation issued a judgment under Code 2B ("Presumption of correctness not overturned"), and thereby affirmed the assessment of $226,300. Plaintiffs appealed the judgment to this court, and thereafter filed their summary judgment motion. Therein, they asked the court to try the 2022 and the 2023 appeals together since they had also challenged the Subject's 2023 assessment before the Monmouth County Board of Taxation.

tax year 2022. The Borough also noted that there is no other base year that would allow the Freeze Act to apply to tax year 2022.

Subsequently, the court directed the parties to submit the MCBT's judgments for other tax years since plaintiffs alleged that they existed. Both parties claimed they were unable to find any judgments. The court then located the MCBT judgment for tax year 2021 on the MCBT's website. That judgment was entered under Code 2B ("Presumption of correctness not overturned") and reflected a total (land plus improvement allocation) of $191,400 in both the "original assessment" column and the "judgment" column on the front page of the judgment. The court provided the same to the parties with an opportunity to supplement their respective pleadings to address the effect of this judgment on plaintiffs' claim for Freeze Act relief.

On July 10, 2023, the Borough supplemented its opposition contending that plaintiffs had not "successfully prosecute[d]" their challenge to the 2021 assessment since "there was no reduction in the assessed value in the 2021 [MCBT] judgment," (relying on Seaboard v. Borough of Penns Grove, 28 N.J. Tax 607, 618 (Tax 2015), which observed that "[t]he Freeze Act protects taxpayers who have successfully prosecuted a challenge to an assessment on their property"). The Borough also argued that since the MCBT's judgment affirmed the 2021 assessment for plaintiffs' failure to overcome its presumptive correctness, the judgment cannot serve as a base year for purposes of the Freeze Act's application.

On July 17, 2023, plaintiffs replied stating that they only wanted Freeze Act relief for tax years 2020 through 2023, and did not desire to have a trial on valuation "when the 2021 base year already establishes a value by law" since the "case is solely about the FREEZE ACT exclusively." They included the 2020 MCBT judgment which was entered under Code 2B and reflected a total (land plus improvement allocation) of $186,700 in both the "original assessment" column and

3

"judgment" column on the front page of the judgment. Plaintiffs stated that their "application for Freeze Act relief can also be granted at the discretion of the plaintiffs for tax year 2023 since there is a 2021 trigger year in range."[3] However, they argued, the Subject should be valued at $165,000 or even lower, and that if "the 2017 value is reduced even by a nominal amount due to the absence of property improvements . . . the true value . . . would be $164,999 or less." This, they claimed can be easily achieved if the Borough settled with plaintiffs for a lower amount.[4]

A summary of the tax years, the MCBT judgments, and their dispositions, are as follows:

| Tax Year | Assessment | MCBT Judgment | Judgment Code | Tax Court |
|---|---|---|---|---|
| 2017 | $168,200 | $168,200 | 2B | Appeal Settled at $165,000 |
| 2018 | $178,600 | $178,600 | Unknown (not attached to Tax Court complaint) | Appeal dismissed for non-compliance with court rule |
| 2019 | $181,100 | $181,100 | 5A - Non-appearance (lack of prosecution) | No appeal |
| 2020 | $186,700 | $186,700 | 2B | No appeal |
| 2021 | $191,400 | $191,400 | 2B | No appeal |
| 2022 | $226,300 | $226,300 | 2B | Appeal Pending |
| 2023 | $243,300 | $243,300 | 6A - Tax Court Pending | Appeal Pending |

**ANALYSIS**

Plaintiffs are correct that their reconsideration motion is of this court's interlocutory Order. The April 14, 2023, Order was not captioned as an Order and Final Judgment as to the issues decided therein. Further, the Order stated that the court would try the valuation counts of each of the complaints for tax years 2022 and 2023 at a later date.

---

[3] On May 19, 2023, plaintiffs filed a complaint for tax year 2023 alleging that the Freeze Act should apply to tax years "2021-2023" using tax year 2021 "as the base year," and that tax years 2022 and 2023 should be consolidated. The MCBT's judgment for tax year 2023 was issued under Code 6A ("Tax Court pending"), which is a dismissal of plaintiffs' petition without prejudice because a prior tax year is pending before the Tax Court (here, tax year 2022). A total (land plus improvement allocation) of $243,300 was reflected in both the "original assessment" column and "judgment" column on the front page of the judgment.

[4] On May 11, 2023, plaintiffs uploaded an unsigned stipulation of settlement (but described as a "Motion to Correct or Delete eCourts Data") reflecting the Subject's value as $164,999 for tax year 2022, with $119,300.01 allocated to land and $45,699.99 allocated to improvements.

That plaintiffs now claim they only want Freeze Act relief for tax years 2020 through 2023 with no trial on valuation, does not render the court's Order of April 14, 2023, as final. Plaintiffs themselves contend that their current motion is of this court's interlocutory order. Further, they continue to argue that the Subject's value for tax years 2022 and 2023 should be $165,000 or less (using the 2017 Tax Court judgment in support). They claim that the "case is solely about the" Freeze Act because the "2021 base year already establishes a value by law," however, the 2021 MCBT judgment affirmed the 2021 assessment of $191,400, which is higher than $165,000. These internally inconsistent statements do not allow this court to conclude that plaintiffs are impliedly withdrawing their valuation claims for the pending tax years 2022 and 2023, and therefore, does not justify treating this reconsideration motion as one that disposes of all pending claims.

Under R. 4:42-2(b), a motion to reconsider an interlocutory order is not subject to strict deadlines and can be filed at any time until entry of final judgment. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 261-64 (App. Div. 1987). A review of such a motion "is . . . a matter committed to the sound discretion of the court." Id. at 263. However, the court's discretion should be exercised conservatively. Id. at 263-64 ("the court's exercise of discretion is not subject to wanton invocation or unfettered judicial response" but must be "for good cause shown" and in the interests of justice). See also Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021) (under R. 4:42-2(b), interlocutory orders can be revised "at any time before the entry of final judgment" and the movant need not show that the "challenged order was palpably incorrect, irrational, or based on a misapprehension or overlooking of significant material presented on the earlier application." The guiding standards are "only sound discretion and the interest of justice.") (internal quotations marks omitted).

5

*Reconsideration as to Lack of Subject-Matter Jurisdiction*

It is unclear from the pleadings whether plaintiffs are asking the court to reconsider its ruling that it lacks subject-matter jurisdiction to decide plaintiffs' allegations that the Borough's assessments are racially discriminatory. To the extent plaintiffs so intended, they have provided nothing that would make this court revisit its Order in the interests of justice. Therefore, the court denies plaintiffs' request to reconsider its finding as to lack of subject-matter jurisdiction.

*Reconsideration as to the Freeze Act's Inapplicability for Tax Year 2022*

Plaintiffs concede that it "is correct that the 2017 value judgment cannot provide relief under the Freeze Act for tax year 2022" as decided by the court in its Order of April 14, 2023. Therefore, the court does not need to reconsider its holding in this regard.

Now, however, plaintiffs are asking for Freeze Act relief for tax years 2020 through 2023 based on the MCBT judgments for tax years 2019 to 2021. They never provided these judgments with their original summary judgment motion although they sought relief under the Freeze Act for all years after 2017. Nonetheless, the court will consider the effect of these judgments since what plaintiffs' seek is a statutory remedy. The Freeze Act requires there be a final judgment, either issued by the MCBT or the court, to trigger the freeze relief. See N.J.S.A. 54:3-26 (county board judgments); N.J.S.A. 54:51A-8 (Tax Court judgments). The statutory remedy should not be denied based on a technicality, here, plaintiffs' failure to include allegedly final MCBT judgments with their earlier summary judgment motion. Therefore, the court will consider the now provided MCBT judgments to determine the merits of plaintiffs' claim relief under the Freeze Act, in the interests of justice.

*The 2019 MCBT Judgment*

On page 10 of its April 14, 2023, Order, this court held that since the stipulation of settlement for tax year 2017 was "silent as to application of the Freeze Act, plaintiffs are correct that the Freeze Act provides relief for tax years 2018 and 2019." In footnote 3, the court stated:

> Plaintiffs had filed an appeal for tax year 2018 (Docket Number 008224-2018). The case was dismissed for their failure to comply with the court rules. However, the Freeze Act will apply to this year since the complaint was dismissed and there was no value judgment either by trial or by stipulation. Plaintiffs did not file an appeal for tax year 2019 to this court, and there is no evidence of a final County Board value judgment for this year.

The second half of the last sentence was because plaintiffs had not provided a copy of the MCBT judgment for 2019. Now they have. However, this judgment does not alter the court's prior decision granting freeze relief for 2019 since the judgment was not one finding the Subject's value. Rather, it was a dismissal of plaintiffs' petition with prejudice under Code 5A because they failed to appear and prosecute their petition. See e.g., Belmont v. Twp. of Wayne, 5 N.J. Tax 110, 115 (Tax 1983) ("[T]he freeze statute provides that it is to apply to final judgments which are based upon valuation.") (citation omitted)). Thus, while the 2019 MCBT judgment does not preclude application of the Freeze Act to carry the 2017 Tax Court (base year) judgment forward into 2019, it cannot serve as a new base year judgment to carry the Freeze Act further forward.

*The 2020 and 2021 MCBT Judgments*

It is undisputed that the 2020 and 2021 MCBT judgments appear to affirm the assessments for those respective tax years and are final since plaintiffs did not appeal either judgment. However, this does not resolve the question of their status as value judgments since each was coded 2B ("Presumption of correctness not overturned").

As noted above, for the Freeze Act to apply, there must be a determination of the value of the property, whether on its merits at trial or by settlement, pursuant to which a judgment is entered. See also Rainhold Holding Co. v. Twp. of Freehold, 15 N.J. Tax 420, 423 (Tax 1996) ("a judgment . . . does not carry the benefit of the Freeze Act unless [it] . . . is [one] . . . determining the assessed value of the property."). Thus, a county board of taxation judgment which "affirms or sustains an assessment without prejudice and involves no hearing or settlement of the valuation issue does not carry the benefit of the Freeze Act." Id. at 427. So are judgments deciding a property's exempt status, see Boys' Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 405 (1977) ("judgment with respect to valuation in one year" qualifies for relief under the Freeze Act but no such relief available in "statutes involving tax exempt status"), or reflecting the withdrawal of a complaint. See Union City Associates v. City of Union City, 10 N.J. Tax 581, 588 (Tax 1989) (a "judgment of withdrawal has none of the attributes of an adjudication on the merits, nor does it reflect the good-faith accommodation of the parties embodied in a settlement stipulation"), aff'd, 247 N.J. Super. 249 (App. Div. 1991).

Here, the 2020 and 2021 MCBT judgments indicate that the assessments were affirmed for plaintiffs' failure to overcome each assessment's presumptive correctness. This accords with N.J.A.C. 18:12A-1.9(e), which provides that "[a] petitioner shall be prepared to prove his or her case by complete and competent evidence. In the absence of some evidence, the [county] board may dismiss the petition."

The Tax Court enters similar such judgments for the same reasons. See MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 378-79 (Tax 1998) ("If the court determines that the plaintiff has failed to overcome the presumption" and there is no counterclaim or other evidence from the defendant, "then the court should enter judgment affirming the

assessment."). The party challenging the assessment, or a county board judgment should "first overcome the presumption [of correctness] by presenting evidence sufficient to demonstrate the value of the subject property, thereby raising a debatable question as to the validity of the assessment" and such evidence must be not simply be "wishful thinking." Id. at 376; Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (plaintiff should provide "cogent evidence" to overcome the presumption of correctness). It is "only when the presumption is overcome does it become incumbent upon the Tax Court to appraise the testimony, make a determination of true value, and fix the assessment." MSGW, 18 N.J. Tax at 377.

Note that even after the court finds that plaintiff overcame the presumption of correctness, a judgment can be entered (or a complaint dismissed) because the plaintiff failed to carry his/her/its burden of proof. Id. at 379 ("[e]ven after having determined that the plaintiff or defendant has overcome the presumption, the court may conclude that no adjustment to the assessment is warranted"). See also Borough of Rumson v. Peckham, 7 N.J. Tax 539, 547 (Tax 1985) ("where the party against whom the presumption operates goes forward with his proof . . . the artificial probative effect of the presumption disappears from the case. If, however, he fails to adduce such proof, the court must direct the entry of a judgment in accordance with the presumption."). "[M]erely overcoming the presumption of correctness in a Tax Court proceeding does not entitle plaintiff to a judgment in its favor." Id. at 550. Rather, "[t]hroughout the Tax Court proceedings, plaintiff retains the burden of ultimate persuasion to upset the county tax board judgment fixing the assessment for the subject property." Ibid. (citations omitted). That burden "is met only when the court can conclude by a preponderance of the credible evidence that plaintiff's opinion of value represents the true value of the subject property." Ibid. (citation omitted).

In other words, whether the plaintiff appears before a county board of taxation or this court, the decision-maker would apply the same standards for deciding whether plaintiff overcame the presumption of correctness and/or carried the burden of persuasion. The underlying basis for an ensuing judgment of a dismissal or assessment affirmance (under Code 2B or by the Tax Court), lies in the fact that the proffered evidence of value was lacking in cogency and quality such that the county board or the Tax Court could not find value. It follows that such a judgment would <u>not</u> be one "on the merits that fixes the assessed value." <u>Rainhold Holding Co.</u>, 15 N.J. Tax at 425.[5]

In contrast is Code 2A on a county board judgment which is used when a county board affirms an assessment because it falls "within range" pursuant to "N.J.S.A. 54:3-22."[6] Such a judgment indicates that the county board has sufficient, competent, and cogent evidence to weigh, but concluded that it should affirm the assessment because the assessed-to-true value ratio falls within the common level range. This is similar to the restriction on the Tax Court under N.J.S.A. 54:51A-6(a). <u>See</u> <u>Gochal</u>, 27 N.J. Tax at 34 (if the assessed-to-true value ratio is "within the common level range, there is no provision for revision of the assessment: no adjustment of the assessment is required or permitted."). Comparison of the assessment to the true value inherently

---

[5] That the Tax Court may affirm an assessment (or a county board's judgment) in addition to, or instead of, simply dismissing the complaint for failure to overcome the presumption of correctness does not automatically render the Tax Court's judgment as one on the merits, i.e., one finding value. <u>See e.g.</u>, <u>U.S. Life Realty Corp. v. Twp. of Jackson</u>, 9 N.J. Tax 66, 68, 79-80 (Tax 1987) (dismissing the complaint/counterclaim against a county board judgment which had affirmed the assessments due to "insufficient evidence to overcome the presumption of correctness of the assessments" because neither party on appeal provided "enough substantial and competent evidence to overcome the presumption of correctness in favor of the county board judgment"). This reasoning would also apply to county board judgments. <u>See</u> N.J.A.C. 18:12A-1.9(e).

[6] N.J.S.A. 54:3-22(c) provides that if a county board "is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall revise the taxable value of the property by applying the average ratio to the true value of the property" with certain exceptions not relevant here. This statute, thus, "limits the relief that may be granted by the county board of taxation." <u>Twp. of North Brunswick v. Gochal</u>, 27 N.J. Tax 31, 34 (Tax 2012).

involves an initial value determination. See e.g. Hovbilt, Inc. v. Twp. of Howell, 138 N.J. 598, 603 (1994) (if a county board is "satisfied by the proofs that the assessment was incorrect," then it can revise the "taxable value of the property" under "N.J.S.A. 54:3-22(c)-(e)"); Passaic Street Realty Assoc., Inc. v. City of Garfield, 13 N.J. Tax 482, 484 (Tax 1993) (the Tax Court must "first . . . find the fair market value of the property" and "[t]hen the proper tax assessment" by applying the "chapter 123" ratio under N.J.S.A. 54:51A-6). Thus, a county board judgment with a 2A Code would be one on the merits, and therefore, would qualify as a valuation judgment for purposes of the Freeze Act.

Similarly, a county board judgment which revises an assessment using any of the subcodes under Code 1 ("Assessment Revised"), would also be considered as a value judgment.[7] If that Code 1 judgment is affirmed by the Tax Court, then the court's judgment will be one on the merits for purposes of the Freeze Act. See Hasbrouck Heights v. Div. of Tax Appeals, 41 N.J. 492 (1964). There, the taxpayers challenged the 1960 assessments on three properties, and the county board of taxation issued a judgment reducing the same. Id. at 494. The taxing district appealed the reduction to the Division of Tax Appeals ("DOTA"). Ibid. The DOTA heard testimony from both parties' appraisers and "found that the testimony preponderated in favor of the taxpayers and dismissed the appeal." Ibid. The Appellate Division affirmed the DOTA's judgments noting that the taxing district's "proof before the [DOTA] . . . failed to satisfy its procedural burden

---

[7] The codes are listed on the reverse of a county board judgment. Code 1A is where "assessed value exceeds 100%." Code 1B is where the "assessment is outside range (N.J.S.A. 54:3-22)". Code IC is where there is "material depreciation (N.J.S.A. 54:4-35.1"). Code 1D is "personal property." Code 1E is "Other" and as to which "an explanation is mandatory" on the face of the judgment. Note that a county board judgment which is entered under Code 3 ("Stipulated") would also qualify for Freeze Act relief. See Borough of South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 489 (1983) ("a consent judgment is a judgment on the merits, [therefore] . . . it is a final judgment for purposes of the Freeze Act.").

of overcoming the presumption in favor of the correctness of the county board judgments by adducing sufficient competent evidence to the contrary." Id. at 494-95.

In a later separate proceeding, the DOTA held that the Freeze Act applied to the subsequent two years. Id. at 495. The taxing district argued that based on the language of the Appellate Division's decision, the Freeze Act cannot apply to a judgment that was "based on technical or procedural defects," here, the district's failure to satisfy the "procedural" burden in not overcoming the presumption in favor of the county board's judgments. Id. at 497. The Supreme Court disagreed and stated that the DOTA's "1960 determinations were rendered after holding a judicial-type hearing at which both [parties] . . . presented evidence," and after the DOTA weighed such evidence. Ibid. Therefore, the Freeze Act applied. Ibid.

The need for a final value judgment, and the ruling in Hasbrouck Heights provide the following conclusions: an un-appealed (thus final) county board judgment either under Code 1 or Code 2A, would be a value judgment for purposes of the Freeze Act. If that county board judgment is appealed, and the Tax Court judgment affirms the same, then the Tax Court judgment is one of value for purposes of the Freeze Act. The same result follows if the Tax Court revises a county board judgment (i.e., changes the assessment amount based on adduced proofs). The ensuing Tax Court judgment would be one of value.

On the other hand, an un-appealed county board judgment under Code 2B would not qualify as a judgment of value to trigger the benefits of the Freeze Act. If that judgment is appealed, and the Tax Court affirms the same (and/or dismisses the Tax Court complaint as a consequence of this finding) because plaintiff failed to overcome the presumption of correctness or fails to carry the burden of proof for purposes of the Tax Court appeal, then the Tax Court's judgment will not qualify as a value judgment for purposes of the Freeze Act.

Under the ruling in Hasbrouck Heights, if a judgment misstates that its basis is because of the complainant's failure to overcome the presumption of correctness or due to plaintiff's failure to carry its burden of proof, then it will not preclude application of the Freeze Act. This of course pre-supposes that the county board or the Tax Court should have determined the value of the property in question after weighing and evaluating the proffered evidence under the preponderance standard.

Here, the 2020 and 2021 MCBT un-appealed (thus final) judgments were entered under Code 2B. Consequently, the MCBT affirmed the assessments for both these tax years. Therefore, the Borough is correct that these judgments cannot be considered as value judgments for purposes of the Freeze Act.[8] In other words, the 2020 MCBT final judgment cannot qualify as a base year, which then means that tax year 2021 or 2022 do not qualify as freeze years. The same result applies to the 2021 final MCBT judgment. It does not qualify as a valid base year; therefore, the subsequent two years, 2022 and 2023, do not merit relief under the Freeze Act.

**CONCLUSION**

For the aforementioned reasons, plaintiffs' motion for reconsideration is denied. Since plaintiffs are making inconsistent claims that their 2022 and 2023 complaints are only about the obtaining Freeze Act relief but that this court to find (or the Borough must try settling to) the Subject's value at some amount less than $165,000, the court will schedule a trial as to the

---

[8] The Borough is not necessarily correct that the Freeze Act applies only to taxpayers who were "successful []" in their valuation appeals, i.e., those who obtained an assessment reduction. Its reliance on the phrase "successfully prosecuted" in Seaboard for this proposition is misplaced. That case did not involve the issue here, i.e., whether the MCBT judgment with Code 2B is a value judgment. Further, Seaboard does not state or imply that a reduction in the tax assessment is required for the Freeze Act to apply. Importantly, the plain language of the Freeze Act does not condition its application to only those final judgments which reflect an assessment reduction.

valuation count of the complaints for tax years 2022 and 2023. An Order reflecting these findings will be entered accordingly.

_____/s/ Mala Sundar_____
Hon. Mala Sundar, P.J.T.C.

14